IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| CARALE SHIELDS, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:24-cv-01082-JDB-jay |
| | ) |
| JONATHAN SKRMETTI, | ) |
| Respondent. | ) |

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS,
DISMISSING § 2254 PETITION AS TIME BARRED,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Before the Court is the pro se petition of Carale Shields, an inmate at Federal Correctional Institution Forrest City, Arkansas, pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry ("D.E.") 1.) The Respondent, Jonathan Skrmetti, has filed a motion to dismiss the Petition (D.E. 18), to which the inmate has responded (D.E. 19).

BACKGROUND

Shields was indicted in the Obion County, Tennessee, Circuit Court on five counts for the sale of a controlled substance in violation of Tennessee Code Annotated § 39-17-417(a)(3).[1] He pleaded guilty to all five counts, which bore different case numbers. On March 5, 1997, the state trial court sentenced him to eight years of "Community Based Alternative" under the Tennessee Community Corrections Act (the "Act") for each of the five convictions.[2] The court ordered the

---

[1] Petitioner was charged in five separate indictments.

[2] Under the Tennessee Community Corrections Act, "state funds [are used] to contract with local governments and qualified private entities to develop community-based alternatives to

sentence in case number 7-471 to be served consecutively to case number 7-470, and the sentences in case numbers 7-472, 7-473, and 7-474 to be served concurrently with case number 7-470, resulting in a total effective sentence of sixteen years. Shields did not file a direct appeal, a state post-conviction petition, or a state post-conviction appeal relative to those convictions.

The inmate violated the terms of his community corrections sentence, and the state trial court revoked his community corrections sentence on July 23, 1999, ordering him to serve an effective sixteen-year sentence in the Tennessee Department of Correction (the "TDOC"). On April 5, 2002, the court entered amended judgments, imposing a ten-year custodial sentence, suspended to one year in the county jail and nine years' probation, for case numbers 7-470 and 7-471. Petitioner received a six-year custodial sentence, suspended to one year in the county jail and five years' probation, for case numbers 7-472, 7-473, and 7-474.

On August 3, 2007, following a probation violation, the state trial court entered an "Order Revoking Probationary Status," imposed a 365-day jail sentence, and ordered that Shields be "placed back under the supervision of the [Tennessee] Department of Probation for the remainder of the sentence originally imposed" after completion of the jail sentence. (D.E. 16-1 at PageID 240.) The court also entered a "Probation Order" suspending the sixteen-year TDOC sentence to a probationary period of the same duration. Petitioner violated the terms of his probation again

---

incarceration that provide a treatment-centered pathway and community-based supervision for offenders." Tenn. Code Ann. § 40-36-103(1). One of the stated purposes of the statute is to "[r]educe the number of felony offenders committed to state penal institutions, local jails, and workhouses for whom a treatment-centered pathway and appropriate evidence-based community supervision will result in less recidivism and more effective outcomes." Tenn. Code. Ann. § 40-36-103(3). Although a sentence thereunder "closely resembles that of probation," it is distinct under Tennessee law. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). "Unlike a revocation of probation proceeding, a new and longer sentence, so long as within the range prescribed by statute, is within the trial court's discretion [following a violation of the conditions of a community corrections sentence]." *State v. McNack*, 356 S.W.3d 906, 910 (Tenn. 2011).

2

and, on October 7, 2011, the court revoked his probationary status, this time reducing the original sentence from sixteen years in TDOC custody to ten years.

The Petition herein, filed February 27, 2024,[3] (D.E. 1 at PageID 15), alleges that: (1) Petitioner's 1997 convictions for sale of a controlled substance violated his right to due process as he was wrongfully removed from the jurisdiction of the juvenile court system and prosecuted as an adult; (2) his guilty plea was invalid because, at the time of his plea, he was a minor and "did not lawfully possess the mental capacity to know the consequences" of pleading guilty; and (3) he received ineffective assistance of counsel (D.E. 1-4 at PageID 52).

## ANALYSIS

Respondent argues in this dispositive motion that the Court need not address the merits of the inmate's habeas claims because the Petition is time barred. A § 2254 petition is subject to a one-year limitations period, commencing from four possible dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

[3] This is the date Shields signed the Petition and certified that he had placed it into the prison mail system. (D.E. 1 at PageID 15.) Under the "prison mailbox rule" established in *Houston v. Lack*, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule to civil actions by pro se prisoners in *Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002), a prisoner's legal mail is considered "filed" when he deposits it in the prison mail system to be forwarded to the Clerk via first-class, postage-prepaid mail.

Application of § 2244(d)(1)(A)

The district court must analyze the procedural history of a petitioner's case to determine when his judgment became "final" for purposes of § 2244(d)(1)(A). Here, this analysis includes consideration of the impact, if any, of the state trial court's amended judgments, revocation orders, and orders designating probationary sentences. "Final judgment in a criminal case means sentence. The sentence is the judgment." *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam) (citation omitted). However, "[t]he entry of a new judgment normally resets the statute-of-limitations clock." *King v. Morgan*, 807 F.3d 154, 159 (6th Cir. 2015). Thus, "[w]hen courts engage in a full resentencing, the resulting sentence is a new 'judgment' that restarts § 2244(d)(1)'s timeclock." *Freeman v. Wainwright*, 959 F.3d 226, 229 (6th Cir. 2020). When "a limited resentencing *benefits* the prisoner," the "reduced sentence is not a new [judgment]." *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) (per curiam) (cleaned up). "A new, worse-than-before sentence, by contrast, amounts to a new judgment." *Id*.

As outlined above, the Obion County Circuit Court entered the judgments for Petitioner's challenged convictions on March 5, 1997. Those judgments sentenced him to an effective period of sixteen years in the community corrections program. The court later revoked his community corrections sentence on July 23, 1999, and ordered him to serve sixteen years in the TDOC. On April 5, 2002, the court entered amended judgments, sentencing him to a total effective sentence of sixteen years in custody, suspended to fourteen years' probation.

The prisoner had thirty days to seek review of the amended judgments by the Tennessee Court of Criminal Appeals (the "TCCA"), Tenn. R. App. P. 4(a), but did not do so. Accordingly, his judgments of conviction became final on May 6, 2002, for purposes of § 2244(d)(1)(A), when

4

the thirty-day period expired.[4]  *See Ross v. Freeman*, No. 4:14-cv-22-HSM-SKL, 2015 WL 1285366, at *1 (E.D. Tenn. Mar. 20, 2015).

The statute of limitations began to run the following day, May 7, 2002.  *See* Fed. R. Civ. P. 6(a)(1)(A) ("When the period is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period").  The limitations period ran uninterrupted until it expired on May 7, 2003.  Shields declared that he placed the Petition in the prison mail system on February 27, 2024, over twenty years after the limitations period had expired.  Accordingly, the Petition is time barred unless statutory or equitable tolling applies.[5]

---

[4]The thirty-day period following entry of the amended judgments actually fell on May 5, 2002.  Because that date was a Sunday, however, they became final the next day, May 6, 2002.  *See* Tenn. R. App. P. 21(a) (the "last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday . . . , in which event the period runs until the end of the next day which is not one of the aforementioned days").

[5]Although the Court concludes that Petitioner's judgments of conviction became final for purposes of § 2244(d)(1)(A) on May 6, 2002, the Court pauses to consider the state trial court's August 2007 "Order Revoking Probationary Status" and the corresponding "Probation Order" entered the same day.  The latter suspended Shields's sentence and imposed sixteen years of probation, but the former stated that he was to be "placed back under the Supervision of the [Tennessee] Department of Probation for the remainder of the sentence originally imposed," (D.E. 16-1 at PageID 240).  Even assuming for the sake of argument that the Probation Order extended the inmate's probationary period, that order would not be construed as a new judgment for purposes of § 2244(d)(1)(A) because it merely altered the probationary period; it did not change Petitioner's underlying TDOC sentence imposed by the amended judgments entered on April 5, 2002.  *Cf. Creasy v. Frink*, Case No. 3:22-cv-00033, 2022 WL 16825182, at **2-3 (M.D. Tenn. Nov. 8, 2022) ("Because the petitioner was not given a new sentence when his Community Corrections placement was revoked but was merely 'ordered to serve the balance of his original sentence' of [sixteen] years at [forty-five percent] in TDOC custody, the revocation proceedings do not factor into the timeliness determination.").  Furthermore, even if the Probation Order did constitute a limited resentencing that resulted in a "new, worse-than-before sentence," *Freeman*, 959 F.3d at 228, the Petition would still be untimely by over a decade.

Lastly, the Court considers the October 2011 "Order Revoking Probationary Status," which reduced Petitioner's original sentence from sixteen to ten years in TDOC custody.  Even if the Court determined that the order qualified as a "limited resentencing," it resulted in "a better-than-before sentence" and therefore does not qualify as a new judgment under § 2244(d)(1)(A).  *Id.* at 230.

5

A. Application of § 2244(d)(1)(D)

Petitioner alleges that he did not challenge his convictions on direct appeal because he "just received [information] that the action was illegal." (D.E. 1 at PageID 5.) This allegation could reasonably be construed as an argument that he is entitled to statutory tolling under § 2244(d)(1)(D), which provides that the one-year limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

The prisoner argues that the Petition is not time barred because he "was a minor at the time of sentencing, received ineffective assistance of counsel, and was not yet aware that he [was] transferred illegally to adult court from juvenile court." (*Id.* at PageID 13.) In determining whether statutory tolling is warranted under § 2244(d)(1)(D), a district court considers "'when a duly diligent person in petitioner's circumstances would have discovered' the factual predicate for his claim." *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017) (quoting *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)). "The operative question in such an inquiry is when the person was aware of the vital facts for his claim, not when he understood the legal significance of those facts." *Id*.

Shields's overarching assertion is that his case was unlawfully transferred from juvenile court to adult court. In support of his claim, he cites to Tennessee Code Annotated § 37-1-134, which lists the "crime[s] or public offense[s] under [which] [t]he disposition of the child shall be as if the child were an adult." Tenn. Code Ann. § 37-1-134(a). He contends that, because the sale of a controlled substance is not one of the "crimes enumerated" under the statute, his case should not have been transferred from juvenile court. (D.E. 1-4 at PageID 52.)

6

Petitioner does not explain why the factual predicate of his claim could only recently have been discovered, however; he merely insists that, as he was a minor at the time of sentencing, he "was not yet aware that he [was] transferred illegally to adult court from juvenile court." (D.E. 1 at PageID 13.) Although Petitioner may not have "understood the legal significance" of § 37-1-134 in relation to his case, he was aware of the charges he faced, his age, and his juvenile status at the time of sentencing in circuit court. *See Smith*, 709 F. App'x at 344. Because the "vital facts" relevant to his claims were discoverable long ago, Petitioner is not entitled to tolling of the limitations period under § 2244(d)(1)(D). *See id*.

B. Equitable Tolling

The one-year limitations period is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649 (internal quotation marks omitted). Courts are cautioned that the doctrine of equitable tolling should be applied only "sparingly." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). It is the petitioner who bears the burden of showing that he is entitled to such relief. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

With the benefit of liberal construction, the inmate appears to argue that he is entitled to equitable tolling of the limitations period because he "was a minor at the time of sentencing, receiv[ed] ineffective assistance of counsel, and was not yet aware that he [was] transferred illegally to adult court from juvenile court." (*See* D.E. 1 at PageID 13.) Additionally, he submits that he "was unconstitutionally sentence[d] due to [the] sentencing court having a lack of jurisdiction." (*Id*. at PageID 14.)

He has failed, however, to demonstrate extraordinary circumstances. Regarding his claim that he "was not yet aware" that he had allegedly been illegally transferred to adult court,

7

"ignorance of the law alone is not sufficient to warrant equitable tolling." *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). Similarly, "an attorney's mistake is typically not grounds for equitable tolling. That is because the lawyer acts as the agent of his client, and the client therefore must bear the risk of attorney error." *Wershe v. City of Detroit*, 112 F.4th 357, 367 (6th Cir. 2024) (internal quotation marks and citations omitted), *cert. denied*, 145 S. Ct. 1128 (2025). Shields's claim that the Obion County Circuit Court allegedly lacked jurisdiction does not exempt him from § 2244(d)(1)'s limitations period. The jurisdiction of the convicting court cannot be challenged at any time during habeas review as Petitioner argues. Rather, "[w]hen Congress enacted the limitations period in [§ 2244(d)(1)], it discerned no reason to provide a blanket exception for jurisdictional claims." *Pacheco v. Habti*, 62 F.4th 1233, 1245 (10th Cir.), *cert. denied*, 143 S. Ct. 2672 (2023). Moreover, even if he could show an extraordinary circumstance, he cannot demonstrate that he was diligent in pursuing his rights given that he filed the Petition over twenty-five years after pleading guilty. Thus, Petitioner has failed to establish that equitable tolling of the limitations period is warranted in this case.

    C.  Actual Innocence

The limitations period may also be "overcome" through a "gateway" claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Shields, however, fails to raise a credible claim of actual innocence that would entitle him to equitable tolling of the limitations period.

The prisoner does not make an explicit claim of actual innocence, but his statement in the Petition that he "just became aware of this miscarriage of justice" can liberally be construed as an attempt to raise such a claim. (*See* D.E. 1 at PageID 5.) However, he pleaded guilty to his state court charges, and "some courts in [the Sixth Circuit] have held that [the] actual-innocence

8

exception does not apply when the petitioner pleaded guilty." *Shofner v. Green*, No. 0:20-CV-23-KKC-HAI, 2020 WL 8475034, at *4 (E.D. Ky. Apr. 16, 2020) (collecting cases). "This approach makes sense [given that,] [i]n general, 'a valid guilty plea relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty.'" *Id*. at *5 (quoting *Class v. United States*, 583 U.S. 174, 183 (2018)) (cleaned up).

Here, the inmate does challenge the validity of his guilty plea, claiming that it was not knowing and intelligent because he was a minor and his attorney was ineffective. Even if his guilty plea does not foreclose his claim of actual innocence, Shields has failed to show that the exception to the limitations period should apply. The actual innocence exception applies to "cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A credible claim of actual innocence "requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he Supreme Court has repeatedly said that the actual-innocence remedy is reserved for only the most extraordinary case." *Hubbard v. Rewerts*, 98 F.4th 736, 747 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1201 (2025).

Petitioner states in his response to the dispositive motion that he "seeks to offer no new evidence." (D.E. 19 at PageID 456.) He insists, however, that his circumstance is an "extraordinary case[]" where the actual-innocence exception should apply because he was sentenced under the wrong statute. (*Id*. at PageID 454-56.) "[A] petitioner may not pass through the equitable gateway by simply undermining the state's case." *Hubbard*, 98 F.4th at 743.

9

"Rather, he must demonstrate that he *factually* did not commit the crime." *Id.* Shields's assertions do not relate to factual innocence.

Because Petitioner has failed to present any new reliable evidence that proves he did not factually commit the crimes to which he pleaded guilty, the exception for claims of actual innocence does not excuse the untimely filing of the Petition.

## CONCLUSION

For the reasons articulated herein, the Petition is DISMISSED WITH PREJUDICE as time barred. The Clerk is DIRECTED to enter judgment for Respondent.

## APPELLATE ISSUES

No § 2254 petitioner may appeal without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *see Dennis v. Burgess*, 131 F.4th 537, 539 (6th Cir. 2025). A petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If the district court denies relief on a procedural ground without reaching the underlying constitutional claim, a COA should issue when the petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not debate the Court's resolution of Petitioner's claims, the Court DENIES a COA.

A party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). If the district court certifies that an appeal

10

would not be taken in good faith or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5). For the same reason it denies a COA, the Court CERTIFIES that any appeal would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.[6]

    IT IS SO ORDERED this 9th day of February 2026.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days of the entry date of this order. *See* Fed. R. App. P. 24(a)(5).